

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*
*157 Church Street*                                    *(203) 821-3700*
*P.O. Box 1824*                                        *Fax (203) 773-5376*
*New Haven, Connecticut 06510*                         *www.usdoj.gov/usao/ct*

April 8, 2005

Edmund Q. Collier, Esq.
Dey, Smith & Collier LLC
771 Boston Post Road
Milford, CT 06460

United States District Court,
District of Connecticut
FILED AT       NEW HAVEN
_____4/8_____ 20 05
Kevin F. Rowe, Clerk
By B. [illegible], [illegible] Clerk

Re: *USA v. Shoreline Motors Corporation*, Criminal No. 3:02CR341(EBB)

Dear Mr. Collier:

This letter confirms the plea agreement entered into between your client, Shoreline Motors Corporation (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal case.

## THE PLEA AND OFFENSES

The defendant agrees to plead guilty to Counts 1, 7, 15 and 19 of the Third Superseding Indictment which is currently pending in this case. Count 1 charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Counts 7, 15 and 19 charge the defendant with wire fraud, in violation 18 U.S.C. §§ 1343 and 2. The defendant understands that in order to be guilty of these offenses, the following essential elements must be satisfied:

*Count 1 – Conspiracy to commit wire fraud, 18 U.S.C. § 371:*

1. A conspiracy or agreement to commit wire fraud was formed, reached or entered into by two or more persons.

2. At some time during the existence or life of the agreement, the defendant knew the purpose(s) of the agreement, and, with that knowledge, then deliberately joined the agreement.

3. At some time during the existence or life of the agreement, one of its alleged members knowingly performed one of the overt acts charged in Count 1 of the indictment and did so in order to further or advance the purpose of the agreement.

Edmund Q. Collier, Esq.　　　　　　　　　- 2 -　　　　　　　　　April 8, 2005

*Counts 7, 15 and 19 – Fraud by wire, 18 U.S.C. §§ 1343, 2(a), & 2(b)*

1. The defendant knowingly devised or participated in a scheme to defraud.

2. The defendant devised or participated in the scheme to defraud with the intent to defraud.

3. In advancing, or furthering, or carrying out the scheme to defraud, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

**THE PENALTIES**

Each of the above-described offenses carries a maximum penalty of five years' probation and a $500,000 fine. Also, the defendant is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $500,000. The Court may impose a term of probation that may include a condition requiring the payment of restitution for the full amount of the victims' loss. U.S.S.G. §§ 8B1.1, 8D1.1, and 8D1.4. The payment of a fine or restitution is subject to the ability of the defendant to pay such a fine or to make such restitution. U.S.S.G. §§ 8C2.2, 8C3.3 & 8B1.1(b)(2). Other conditions may include requiring the defendant to remedy the harm caused by the offense and to eliminate or reduce the risk that the instant offense will cause future harm, and community service, U.S.S.G. §§ 8B1.2(a) and 8B1.3.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $400 on each count of conviction, for a total of $1600. The defendant agrees to pay the special assessments to the Clerk of the Court on or before the day of sentencing.

Finally, unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of a fine amount not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. §§ 3572 (h), (i) and 3612(g).

Edmund Q. Collier, Esq.                    - 3 -                    April 8, 2005

Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, subject to the provisions of U.S.S.G. §§ 8B1.1(b)(2) and 8C2.2, as applicable. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution.

The defendant understands that the payment of restitution may be a condition of any supervision imposed by the Court and that failure to make payments may be considered a violation of the order of supervision.

The parties agree that the defendant, acting through its agents and employees, caused a substantial loss to Mitsubishi Motors Credit of America, Inc. ("Mitsubishi Credit"). At this time, the parties have not reached an agreement as to the amount of the loss to Mitsubishi Credit. The defendant represents, in any event, that it is not a going concern, has no assets of any substantial value, and does not expect to be able to pay any restitution to Mitsubishi Credit or any other party.

The parties further agree that the defendant, acting through its agents and employees, caused losses to a large number of its customers. The defendant has provided approximately $400,000 to a fund to settle class-action claims against it filed by various customers relating to the conduct at issue in this case. Notwithstanding the agreement described in this paragraph and the $400,000 paid by the defendant to Shoreline Mitsubishi customers in connection with civil cases, the defendant understands that the Court may order the defendant to make additional restitution to other victims. However, as noted above, the defendant does not expect that it will be able to make any additional restitution to other victims.

**THE SENTENCING GUIDELINES**

1. Applicability

The defendant understands that although application of the United States Sentencing Guidelines is not mandatory, they are advisory and the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case. *See United States v. Booker*, 543 U.S. __ (2005). The defendant expressly understands that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the presentence investigation report. The defendant further understands that it has no right to withdraw its guilty plea if its sentence or the Guideline application is other than it anticipated.

Edmund Q. Collier, Esq.                    - 4 -                         April 8, 2005

2.    Guideline Calculation

Chapter eight of the Sentencing Guidelines apply in this case. U.S.S.G. § 8A1.1. The Government and the defendant calculate the defendant's applicable Sentencing Guidelines using the November 2001 Guidelines Manual to be at a fine range of $5,040,000 to $10,080,000.

The defendant's culpability score, based on the factors set forth in U.S.S.G. § 8C2.5, is 4 (5 points to start, plus 1 point under subsection (b)(5) based on the defendant having 10 or more employees and an individual with substantial authority participating in the offense, and less 2 points for acceptance of responsibility because the defendant fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct). The Government will recommend the acceptance points only if the defendant fully, completely, and truthfully discloses to the Probation Office the information requested, the circumstances surrounding its commission of the offense, and its criminal history. This recommendation is further conditioned upon the defendant's submission to the Probation Office, prior to the date of sentencing, of a complete and truthful financial statement setting forth all assets, including but not limited to, cash deposits, securities, real estate, and other property owned by or held on behalf of the defendant in the defendant's own name or in any other name. The defendant expressly understands that the Court is not obligated to accept the Government's recommendation of the two point reduction. Also, the Government will not make this recommendation if the defendant engages in any acts which (1) indicate that it has not terminated or withdrawn from criminal conduct or associations (U.S.S.G. § 3E1.1); (2) could provide a further basis for an adjustment for obstructing or impeding the administration of justice (U.S.S.G. § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government will not make this recommendation if the defendant seeks to withdraw its guilty plea. The defendant expressly understands that it may not withdraw its plea of guilty if, for the reasons explained above, the Government does not make this recommendation.

The defendant's fine range is $5,040,000 to $10,080,000. This range is arrived at under U.S.S.G. § 8C2.7 by multiplying the applicable base fine determined under U.S.S.G. § 8C2.4 by the applicable minimum multiplier and applicable maximum multiplier under U.S.S.G. § 8C2.6. The base fine is $6,300,000 pursuant to the Offense Level Fine Table in U.S.S.G. § 8C2.4(d) after applying U.S.S.G. § 8C2.3. Section 8C2.3 requires application of U.S.S.G. § 2B1.1 to the offense conduct, which leads to an offense level of 28 (base offense level of 6; an addition of 16 levels to reflect an intended loss of at least $1,000,000; an addition of 4 levels because there were more than 50 victims; and an addition of 2 levels because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification). The applicable culpability score of 4 translates into a minimum multiplier of 0.80 and a maximum multiplier of 1.6. U.S.S.G. § 8C2.6.

Edmund Q. Collier, Esq.           - 5 -           April 8, 2005

As discussed above, the defendant is not a going concern and has no substantial assets. Accordingly, the defendant believes that it will be unable to pay a fine within the above-calculated guideline range.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline fine range specified above or the parties' positions concerning a particular sentence. The defendant further expressly understands that it will not be permitted to withdraw the plea of guilty if the Court does not impose a sentence it requests or imposes a sentence outside the Guideline range set forth in this agreement.

3.     Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances it is entitled to appeal its conviction and sentence. 18 U.S.C. § 3742. It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. §§ 2255 or 2241, the conviction or sentence imposed by the Court if that sentence is within the Guideline range identified above, even if the Court reaches a sentencing range permitting such a sentence by a Guideline analysis different from that specified above. The defendant expressly acknowledges that it is waiving its appellate rights knowingly and intelligently. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the agreed Guideline calculation.

4.     Factual Stipulation

Pursuant to section 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not purport to set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant expressly understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

5.     Information to the Court

The Government and the defendant expressly reserve their rights to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, it is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to its file, with the exception of grand jury material.

Edmund Q. Collier, Esq.               - 6 -                    April 8, 2005

**WAIVER OF RIGHTS**

    1.    <u>Waiver of Trial Rights and Consequences of Plea</u>

The defendant understands that it has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent it.

The defendant understands that it has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against it, the right not to be compelled to incriminate itself, and the right to compulsory process for the attendance of witnesses to testify in its defense. The defendant understands that by pleading guilty it waives and gives up those rights and that if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that if it pleads guilty, the Court may ask it questions about the offense to which it pleads guilty, and if it answers those questions falsely under oath, on the record, and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making false statements.

    2.    <u>Waiver of Statute of Limitations</u>

The defendant understands and agrees that should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any criminal prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any criminal prosecution that is not time-barred on the date the plea agreement is signed.

    3.    <u>Waiver of Right To Post-Conviction DNA Testing of Physical Evidence</u>

The defendant understands that the Government has various items of physical evidence in its possession in connection with this case that could be subjected to DNA testing. The defendant further understands that following conviction in this case, it could file a motion with the Court to require DNA testing of physical evidence pursuant to 18 U.S.C. § 3600 and § 3600A in an attempt to prove its innocence. The defendant fully understands its right to have all the physical evidence in this case tested for DNA, has discussed this right with its counsel, and knowingly and voluntarily waives its right to have such DNA testing performed on the

Edmund Q. Collier, Esq.            - 7 -            April 8, 2005

physical evidence in this case. Defendant fully understands that because it is waiving this right, the physical evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

## SCOPE OF COOPERATION

The defendant agrees to cooperate fully with the Government and special agents of the Federal Bureau of Investigation, U.S. Secret Service, and state and/or local law enforcement authorities as may be required. The defendant understands that all of its cooperation, testimony, statements, information and other assistance as provided below must be fully truthful, accurate and complete. This cooperation will include the following:

1. The defendant agrees to be debriefed and to disclose fully and truthfully and on a continuing basis all information concerning its knowledge of and participation in criminal activities by itself or others whether or not related to the charges to which it is pleading guilty. All documents and objects that may be relevant to the investigation and which are in the defendant's possession, custody or control shall be furnished by it upon request.

2. The defendant agrees to testify truthfully before a grand jury and at any trials or other proceedings in the District of Connecticut or elsewhere as may be required by the Government.

### Informing the Court/Others About Cooperation

The defendant expressly understands that the sentence to be imposed upon it is within the sole discretion of the sentencing Court. The Government cannot and does not make any promise or representation as to what sentence the defendant will receive, nor will it recommend any specific sentence to the sentencing Court. However, the Government will inform the sentencing Court and the Probation Office of the nature and extent of the defendant's cooperation, including its investigative or prosecutive value, completeness, truthfulness, and accuracy, or the lack of its value, completeness, truthfulness and accuracy. In addition, the Government will make this information known to any other administrative or governmental entity designated in writing by the defendant's counsel.

In addition, if the Government determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the Government will file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e) advising the sentencing Court of all relevant facts pertaining to that determination and requesting the Court to sentence the defendant in light of the factors set forth in section 5K1.1(a)(1)-(5). The defendant understands that the determination whether or not to file such a motion rests solely with the Government. The defendant further understands that,

Edmund Q. Collier, Esq. - 8 - April 8, 2005

whether or not the Government files a motion pursuant to Section 5K1.1, the Court may impose a sentence it believes to be reasonable in consideration of all relevant factors, including the defendant's cooperation. The defendant understands that even if a 5K1.1 and/or § 3553(e) motion is filed, the Court is under no obligation to grant or act favorably upon the motion. It is expressly understood that the sentence to be imposed on the defendant remains within the sole discretion of the sentencing Court.

Use of Information Against Defendant

Except as provided below, the Government will not use any information disclosed by the defendant during the course of his cooperation against it in any subsequent, unrelated criminal prosecution. The defendant understands that under § 1B1.8 of the Sentencing Guidelines, the information that it discloses must be brought to the attention of the Court. The Government will ask that such information not be considered by the Court in tailoring an appropriate sentence. However, the defendant also understands, as set forth below, that if it breaches this agreement such information, statements or testimony will be considered by the Court in connection with sentencing, and the Government may prosecute it for any federal criminal violation and may use any information, statements or testimony provided by it, as well as leads or evidence derived therefrom, in such prosecution. Nothing in this agreement shall be construed to protect the defendant from prosecution for perjury, false statement or obstruction of justice, or any other offense committed by it after the date of this agreement, and the information provided by the defendant may be used against it in any such prosecutions.

**BREACH OF AGREEMENT**

The defendant understands that if, before sentencing, it violates any term or condition of this agreement, violates a condition of its bond or supervised release, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. In addition, if the Government determines that the defendant has intentionally given false, misleading, or incomplete information or testimony; has failed to disclose its involvement in other criminal conduct; has committed or attempted to commit any further crimes; has failed to appear for sentencing; has failed to cooperate fully; or otherwise has violated any provision of this agreement, then the Government may deem all or part of this agreement null and void.

In the event the Government voids the plea agreement, the defendant will be subject to prosecution for the underlying offense as well as any other federal criminal violation, including but not limited to perjury, false statement, and obstruction of justice. Any such prosecution may be premised upon (1) any information or statement provided by the defendant to the Government or other designated law enforcement agents or officers, (2) any testimony given by it in court, grand jury, or other proceedings, and (3) any leads derived from such information, statement, or

Edmund Q. Collier, Esq.                          - 9 -                          April 8, 2005

testimony. The defendant understands that such information, statements, testimony, and leads derived therefrom may be used against it in any such prosecution. Moreover, the defendant agrees that all such information, statements, or testimony shall be admissible in criminal proceedings against it, and it expressly waives any claim under the Constitution, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule or statute, that such information, statements, testimony, or leads should be suppressed or excluded. Finally, the defendant waives any claim that such prosecution is time-barred where the statute of limitations has expired between the signing of this agreement and the commencement of any such prosecution.

## ACKNOWLEDGMENT OF GUILT; VOLUNTARINESS OF PLEA

The defendant acknowledges that it is entering into this agreement and is pleading guilty freely and voluntarily because it is guilty. The defendant further acknowledges that it is entering into this agreement without reliance upon any discussions between the Government and it (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges its understanding of the nature of the offense to which it is pleading guilty, including the penalties provided by law. The defendant also acknowledges its complete satisfaction with the representation and advice received from its undersigned attorney. The defendant and its undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in this case. The defendant also acknowledges that it has previously waived any potential conflict of interest that might otherwise have arisen by virtue of the fact that at one point before it was indicted in this case, it may have been represented with respect to this matter and with respect to other unrelated matters by the same attorney who represents co-defendant Angel Hernandez in this case. The defendant continues to waive any potential conflict of interest regarding the representation of Angel Hernandez by the defendant's former attorney.

## DEFENDANT NOT A PREVAILING PARTY

The defendant expressly acknowledges that it is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the counts of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights it may have to seek reasonable attorney's fees and other litigation expenses under the Hyde Amendment.

Edmund Q. Collier, Esq.            - 10 -            April 8, 2005

**SCOPE OF AGREEMENT**

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to it with respect to any civil or administrative consequences that may result from the plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. The defendant understands and acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving it.

**COLLATERAL CONSEQUENCES**

The defendant further understands that it will be adjudicated guilty of the offenses to which it has pleaded guilty and may thereby be deprived of certain rights. The defendant understands that the Government reserves the right to notify any state or federal agency by whom it is licensed, or with whom it does business, as well as any future employers of the fact of its conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY**

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the defendant in the District of Connecticut as a result of the conduct that forms the basis for the indictment in this case as well as for any conduct referred to in the Stipulation of Offense Conduct which was made a part of the plea agreement in the case of *United States v. Louis Pierro*, Case No. 3:05CR85 (EBB). After sentencing, the Government will move to dismiss the Indictment, the Superseding Indictment, the Second Superseding Indictment, and Counts 2-6, 8-14, 16-18, and 20-22 of the Third Superseding Indictment to the extent they apply to the defendant.

Edmund Q. Collier, Esq.                     - 11 -                         April 8, 2005

**NO OTHER PROMISES**

    The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

    This letter shall be presented to the Court, in open court, and filed in this case.

                        Very truly yours,

                        KEVIN J. O'CONNOR
                        UNITED STATES ATTORNEY

                        JONATHAN BIRAN
                        ASSISTANT UNITED STATES ATTORNEY

                        MICHAEL S. McGARRY
                        ASSISTANT UNITED STATES ATTORNEY

Edmund Q. Collier, Esq.                                  - 12 -                                    April 8, 2005

      The defendant certifies that it has read this plea agreement letter and its attachment(s) or has had it read or translated to it, that it has had enough time to discuss it with its attorney, that its attorney has answered any questions it had about it, that it sets forth the entire agreement and understanding between it and the Government, and that it fully understands and accepts the terms thereof.

_____          4/8/05
SHORELINE MOTORS CORPORATION        Date
Defendant
By _Edmund Collier_

      I have read or thoroughly reviewed the plea agreement letter and its attachment to my client, who advises me that it understands and accepts its terms.

_____          4/8/05
EDMUND Q. COLLIER., ESQ.            Date
Counsel for Shoreline Motors Corporation

Edmund Q. Collier, Esq.                    - 13 -                        April 8, 2005

## STIPULATION OF OFFENSE CONDUCT

The defendant, Shoreline Motors Corporation, and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to Counts 1, 7, 15 and 19 of the Third Superseding Indictment:

In or about February 2000, Anthony Hernandez was the 100 percent owner of Shoreline Motors Corporation, which did business as Shoreline Mitsubishi, an automobile dealership that was located at 165 North Main Street, Branford, Connecticut. Disappointed with the performance of Shoreline Mitsubishi, Anthony Hernandez hired Angel Hernandez (no relation) as Shoreline Mitsubishi's Sales Manager. Prior to joining Shoreline Mitsubishi, Angel Hernandez worked at Shelton Mitsubishi, in Shelton, Connecticut, as a manager. Shortly after Angel Hernandez joined Shoreline Mitsubishi, the dealership's General Manager, Bruce Vetre, decided to leave Shoreline Mitsubishi. Angel Hernandez then replaced Vetre as Shoreline Mitsubishi's General Manager. Anthony Hernandez authorized Angel Hernandez to run the day-to-day sales and financing operations of Shoreline Mitsubishi. Eventually, Anthony Hernandez transferred a 25 percent ownership interest in the defendant to Angel Hernandez.

At all times between February 2000 and July 2002, Mitsubishi Motors Credit Corporation of America ("Mitsubishi Credit"), headquartered in Cypress, California, offered financing to qualified customers of Shoreline Mitsubishi.

Between in or about February 2000 and in or about July 2002, the defendant, acting through Angel Hernandez and its other employees and agents, knowingly and willfully joined in an unlawful agreement to commit wire fraud. The other members of the conspiracy included Angel Hernandez, Bruce Vetre (who rejoined the dealership as Business Manager in approximately July 2001), Louis Pierro, Jose Concepcion, David Brown, Richard Brown, James Clanton, Nelson Datil, Richard Dominguez, Jose Espinosa, Dariel Perez Torres, Michael Rivera, and others. The conspiracy involved an agreement to use the wires to defraud Mitsubishi Credit and customers of Shoreline Mitsubishi. To this end, Angel Hernandez and other Shoreline Mitsubishi employees submitted false customer credit information to Mitsubishi Credit by fax and, later, via the Internet using Daybreak Lending Software. Most commonly, Angel Hernandez or another Shoreline Mitsubishi employee inflated the customers' incomes above the truthful income figures the customers had provided to the dealership. These false credit applications were submitted to Mitsubishi Credit in order to deceive Mitsubishi Credit concerning the customers' income and other material information, and thereby to induce Mitsubishi Credit to approve the extension of credit to customers of Shoreline Mitsubishi who would not have qualified for automobile financing at all or for the amounts approved by Mitsubishi Credit, had such fraudulent information not been provided to Mitsubishi Credit.

The defendant's employees and agents on occasion willfully failed to disclose to

Edmund Q. Collier, Esq.                    - 14 -                    April 8, 2005

customers the existence of large "balloon payments" at the conclusion of their financing contracts, or willfully misled customers with regard to the terms and conditions of those balloon payments. In addition, prior to delivering some automobiles to the purchasing customers, the defendant's employees and agents removed, or caused to be removed from those automobiles, the so-called "Monroney stickers" which showed the Manufacturer's Suggested Retail Price ("MSRP") for such automobiles, so that the customers would not be able to easily ascertain the MSRP for the automobiles they were purchasing. Furthermore, at the time some customers took possession of the automobiles they purchased at Shoreline Mitsubishi, the defendant's employees and agents charged, or caused others to charge, a substantially higher price for those automobiles than the customers had agreed to pay. In addition, the defendant's employees and agents on occasion failed to disclose to customers that they were being charged for insurance policies and/or extended service contracts which the customers had not requested. The defendant's employees and agents also charged, or caused others to charge, customers for optional items such as CD changers that were not in fact installed in the automobiles which were delivered to the customers. After Mitsubishi Credit extended financing to a customer of Shoreline Mitsubishi whose credit information had been falsely reported to Mitsubishi Credit, the defendant accepted payment from Mitsubishi Credit for the automobile Shoreline Mitsubishi delivered to the customer. With the funds it obtained from Mitsubishi Credit as a result of the scheme to defraud implemented by the defendant's employees and agents, the defendant disbursed profits and/or made salary payments to Angel Hernandez, and paid salaries and/or commissions to Bruce Vetre, Louis Pierro, Jose Concepcion, David Brown, Richard Brown, James Clanton, Nelson Datil, Richard Dominguez, Jose Espinosa, Dariel Perez Torres, Michael Rivera, and other coconspirators.

In furtherance of the conspiracy to commit wire fraud described above, on or about July 30, 2001, the defendant, acting through its employees and agents, submitted to Mitsubishi Credit over the Internet using Daybreak Lending Software a false customer credit application in connection with the purchase of a 2001 Mitsubishi Montero by a customer who shall be referred to here as K.M. K.M.'s co-signer on this transaction was an individual who will be referred to here as M.M. Richard Dominguez was the salesperson on that transaction. Dominguez met with K.M., who told him that she was unemployed. Dominguez knew that, if K.M.'s unemployment was truthfully reported to Mitsubishi Credit, it was likely that Mitsubishi Credit would not approve K.M. for financing of the purchase of a new Mitsubishi Montero. Dominguez provided a draft credit application to the sales desk concerning K.M. and M.M. with the expectation that, before the person Daybreaking the deal wired the credit application to Mitsubishi Credit, this other Shoreline Mitsubishi employee would invent a job and income for K.M. In fact, at the time the credit application for K.M. and M.M. was wired to Mitsubishi Credit, K.M.'s employer was listed on the credit application as "DEWEY CHITIAM & HOWE ATTORNEY." According to the credit application wired to Mitsubishi, K.M. earned a monthly gross salary at Dewey Chitiam & Howe of $3500, and had been employed at that supposed law firm for two years. K.M.'s occupation at Dewey Chitiam & Howe was listed on the credit application as "Management."

Edmund Q. Collier, Esq.                    - 15 -                    April 8, 2005

Based on this and other false information on the credit application wired to Mitsubishi Credit, Mitsubishi Credit extended financing to K.M. and M.M. for their purchase of the 2001 Mitsubishi Montero. As a result of this agreement to finance K.M. and M.M.'s purchase, Mitsubishi Credit provided funds to the defendant, part of which funds represented a profit to the defendant on the sale of this particular Mitsubishi Montero. The defendant, in turn, paid a commission to Dominguez in connection with this transaction.

In furtherance of the conspiracy to commit wire fraud described above, on or about November 27, 2001, the defendant, acting through its employees and agents, submitted to Mitsubishi Credit over the Internet using Daybreak Lending Software a false customer credit application in connection with the purchase of a 2002 Mitsubishi Galant by a customer who will be referred to here as P.B. P.B.'s co-signer on this transaction was her sister, who will be referred to here as M.B. David Brown was the salesperson on this transaction. David Brown met with P.B. and M.B., who told him that M.B. worked for a company and earned a monthly gross salary at that company of approximately $1600. Angel Hernandez, David Brown and co-defendant Bruce Vetre knew that, if M.B.'s salary was truthfully reported to Mitsubishi Credit, it was likely that Mitsubishi Credit would not approve P.B. and M.B. for financing of the purchase of a new Mitsubishi Galant. Angel Hernandez, David Brown, and Bruce Vetre agreed to provide a false employer and salary on the credit application that was to be submitted to Mitsubishi Credit for the P.B./M.B. transaction. On that credit application, M.B.'s employer was listed as VRC Crafting. The credit application further represented that M.B. had worked for VRC Crafting for over two years, and that her salary at the time was $3400 per month. In fact, VRC Crafting was a company owned by Bruce Vetre which sold fishing rods. M.B. never worked for VRC Crafting. Based on this misrepresentation concerning M.B.'s employer and salary, Mitsubishi Credit extended financing to P.B. and M.B. for their purchase of the 2002 Mitsubishi Galant. As a result of this agreement to finance P.B. and M.B.'s purchase, Mitsubishi Credit provided funds to the defendant, part of which funds represented a profit to the defendant on the sale of this particular Mitsubishi Galant. The defendant, in turn, paid a commission to David Brown in connection with this transaction.

In furtherance of the conspiracy to commit wire fraud described above, on or about January 31, 2002, the defendant, acting through its employees and agents, submitted to Mitsubishi Credit over the Internet using Daybreak Lending Software a false customer credit application in connection with the purchase of a 2002 Mitsubishi Galant by a customer who shall be referred to here as B.M. B.M.'s co-signer on this transaction was his wife, who will be referred to here as C.M. Nelson Datil was the salesperson on that transaction. Datil met with B.M. and C.M. in connection with the purchase. B.M. was told by Datil that he needed to have a co-signer on the purchase. C.M. agreed to be the co-signer. C.M. told Datil that she was unemployed and had not worked in over seven (7) years. If C.M.'s lack of income had been truthfully reported to Mitsubishi Credit, it was likely that Mitsubishi Credit would not have approved B.M. and C.M. for financing of the purchase of the new Mitsubishi Galant. Datil was

Edmund Q. Collier, Esq.            - 16 -            April 8, 2005

told where C.M. had worked seven years ago, and was told that she had not worked there in seven (7) years. After Datil was informed that C.M. was not employed and had no current income, the information on the credit application that was sent via the Daybreak system to Mitsubishi Credit, was changed by Datil or one of his coconspirators. At the time the credit application for C.M. and B.M. was wired to Mitsubishi Credit, C.M.'s employer was listed on the credit application as "Duturamic" and her monthly gross income was listed as $2800. These representations were false. Additionally, the credit application wired to Mitsubishi falsely stated that C.M. had worked there for 12 years. Based on this and other false information on the credit application wired to Mitsubishi Credit, Mitsubishi Credit extended financing to B.M. and C.M. for their purchase of the 2002 Mitsubishi Galant. As a result of this agreement to finance B.M. and C.M.'s purchase, Mitsubishi Credit provided funds to the defendant, part of which funds represented a profit to the defendant on the sale of this particular Mitsubishi Galant. The defendant, in turn, paid a commission to Datil in connection with this transaction.

     The written stipulation above is incorporated into the preceding plea agreement. It is understood, however, that the defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

_____     4/8/05
SHORELINE MOTORS CORPORATION     Date
Defendant
By _Edmund Collier_

_____     4/8/05
EDMUND Q. COLLIER, ESQ.     Date
Attorney for the Defendant

_____     4/8/05
JONATHAN BIRAN     Date
ASSISTANT U.S. ATTORNEY

_____     4/8/05
MICHAEL S. McGARRY     Date
ASSISTANT U.S. ATTORNEY

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A. The payment of restitution is subject to the ability of the defendant to make such restitution. See U.S.S.G. §§ 8C2.2, 8C3.3 & 8B1.1(b)(2).

The order of restitution may include:

1.  If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

> A. Return the property to the owner of the property or someone designated by the owner; or
>
> B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:
>
>> The greater of -
>>
>> (I) the value of the property on the date of the damage, loss, or destruction; or
>>
>> (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution shall be a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's resentencing to any sentence which might originally have been imposed by the Court. See 18 U.S.C. § 3614. The Court may also order that the defendant give notice to any victims of its offense under 18 U.S.C. § 3555. Finally, if the Court orders restitution, that order of restitution will have the effect of a civil judgment against the defendant.